*Gateway Terry, LLC v. Prince George's County, et al.*, No. 708, Sept. Term 2020.
Opinion by Arthur, J.

**TRANSFER AND RECORDATION TAXES – EXEMPTIONS**

Section 12-108 of the Tax-Property Article ("TP") of the Maryland Code (1986, 2019 Repl. Vol., 2021 Supp.) creates an exemption from State recordation taxes for an instrument of writing that transfers property or grants a security interest to "the State," "an agency of the State," or "a political subdivision in the State." TP § 13-207(a)(1) creates an exemption from State transfer taxes "to the same extent" that "[a]n instrument of writing" is exempt from the "recordation tax under . . . [TP] § 12-108(a)." Section 10-187(a) of the Prince George's County Code creates an exemption from County transfer taxes for "[c]onveyances to the State, any agency of the State, or any political Subdivision of the State."

Section 1-115(b) of the General Provisions Article ("GP") of the Maryland Code defines "State, with a capital "S," to mean "Maryland." That definition applies, however, only to the extent that the Code does not supply a different definition. *See* GP § 1-101.

TP § 1-101(kk) contains another definition of "State": "(1) a state, possession, or territory of the United States; (2) the District of Columbia; or (3) the Commonwealth of Puerto Rico."

Relying on the definition of "State" in TP § 1-101(kk), an LLC, owned by a pension fund for employees of Los Angeles County, California, asserted that it was exempt from transfer and recordation taxes because it is a "political subdivision" in or of the "State" of California. The Maryland Tax Court disagreed, as did the Circuit Court for Prince George's County.

The Court of Special Appeals affirmed the conclusion that the exemptions do not apply. The statutory term "*the* State," in which the word "State" is modified by the definite article "the," refers to one specific state, which, in context, could only be the State of Maryland. This conclusion is supported by other provisions of the Tax-Property Article, in which the term "the State" uniformly refers to the State of Maryland. The conclusion is also supported by the statutory history of the State exemptions, which previously created exemptions for transfers to "this State," and which were adopted in their current form with no intention to effectuate a substantive change.

In addition, the statutory history explains why we have a second definition of "State" or "state" in TP § 1-101(kk) and where the second definition applies: it is a shorthand reference for a longer set of terms ("state, possession, territory, the District of Columbia, or the Commonwealth of Puerto Rico") that had appeared at various places in former Article 81, the Tax-Property Article's predecessor. Because the predecessor of the

current State statutes created an exemption for transfers to "this State," and not to a "state, possession, territory, the District of Columbia, or the Commonwealth of Puerto Rico," the definition of "State" or "state" in TP § 1-101(kk) does not apply to those statutes.

Finally, the Prince George's County Code defines "State" to mean "the State of Maryland." Consequently, the County exemption does not apply to a transfer to an entity that claims to be a political subdivision of a state other than the State of Maryland.

Circuit Court for Prince George's County
Case No. CAL19-37382

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0708

September Term, 2020

———————————————————————

GATEWAY TERRY, LLC

v.

PRINCE GEORGE'S COUNTY, ET AL.

———————————————————————

Fader, C.J.,
Arthur,
Kenney, James A., III
   (Senior Judge, Specially Assigned),

JJ.

———————————————————————

Opinion by Arthur, J.

———————————————————————

Filed: January 26, 2022

* Beachley, J., did not participate in the Court's
decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

An LLC, owned by a pension fund for the employees of Los Angeles County, California, purchased real property in Prince George's County. The LLC claimed a statutory exemption from State transfer and recordation taxes on the ground that it was "a political subdivision in the State." *See* Md. Code (1986, 2019 Repl. Vol., 2021 Supp.), § 12-108 of the Tax-Property Article ("TP"); TP § 13-207(a)(1). The LLC also claimed a statutory exemption from County transfer taxes on the ground that it was a "political subdivision of the State." *See* Prince George's County Code § 10-187(a)(1).

The Maryland Tax Court denied the LLC's request for a refund, and the Circuit Court for Prince George's County affirmed the tax court's decision.

The LLC appealed. We too affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves pure questions of law. The material facts are not in dispute.

Appellant Gateway Terry, LLC, is a California limited liability company, wholly owned and managed by the Los Angeles County Employees Retirement Association. In November 2017, Gateway Terry purchased Terrapin Row, a group of residential condominium units in College Park, for $186,460,000. After the sale, Gateway Terry presented a deed, a deed of trust, and other related documents for recordation among the land records of Prince George's County.

Absent an exemption, a transferee, such as Gateway Terry, must pay State and local transfer and recordation taxes when it records certain documents among the land records. In general, the amount of taxes due depends on the consideration paid.

Using the figure of $186,460,000 as the consideration paid, the County's Office of Finance collected $2,610,440 in County transfer taxes and $1,025,530 in State recordation taxes. Using the same figure, the Clerk of the Circuit Court for Prince George's County collected $932,300 in State transfer taxes.

Gateway Terry applied for a refund. As grounds for the refund, Gateway Terry invoked the exemption from State recordation and transfer taxes in the case of a transfer to "the State[,] an agency of the State[,] or a political subdivision in the State." *See* TP § 12-108; TP § 13-207(a)(1). In addition, Gateway Terry invoked the exemption from County transfer taxes for "[c]onveyances to the State, any agency of the State, or any political Subdivision of the State." *See* Prince George's County Code § 10-187(a)(1). Gateway Terry argued that, as an LLC whose sole owner was a public pension fund for employees of a local government in the State of California, it qualified as a political subdivision in or of "the State." Both the County and the State of Maryland denied the request for a refund.

Gateway Terry appealed to the Maryland Tax Court, arguing that it was entitled to the exemptions. The court convened a hearing, at which the Gateway Terry and the taxing authorities, Prince George's County and the State of Maryland, debated the correct interpretation of the term "the State" in the applicable statutes.

At the end of the hearing, the court held the record open to allow the parties to submit materials pertaining to the legislative history of the term "the State." Gateway Terry submitted additional materials, but those materials did not concern the legislative history. Instead, the materials raised a new question about whether the State had

2

discriminated against foreign LLCs like Gateway Terry, in violation of principles of equal protection, by requiring them to pay transfer and recordation taxes while exempting agencies and political subdivisions of the State of Maryland.

The tax court issued a memorandum opinion and order, affirming the decisions to deny the tax exemptions. The court held that, under the applicable statutes, the term "the State" refers to the State of Maryland and to no other state. Because Gateway Terry is not a political subdivision in or of the State of Maryland, the court held that it does not qualify for the exemptions. The tax court also held that, even if the exemptions applied to a transfer to a state other than the State of Maryland (or to an agency or political subdivision of a state other than the State of Maryland), Gateway Terry could not claim the exemption, because it is not a political subdivision of the State of California. The tax court did not address the equal protection argument that Gateway Terry raised in the supplemental submission that it filed after the hearing.

Gateway Terry petitioned for judicial review in the Circuit Court for Prince George's County, which affirmed the tax court's decision. Like the tax court, the circuit court did not consider the equal protection argument.

Gateway Terry noted this timely appeal.

### QUESTIONS PRESENTED

Gateway Terry has submitted three questions, which we have reworded as follows:

1. Did the Tax Court err as a matter of law in determining that "the State" in § 12-108(a)(1) of the Tax-Property Article referred to the State of Maryland and not to any other state?

3

2. Did the Tax Court err as a matter of law in determining that Gateway Terry is not an agency or political subdivision of the State of California?

3. Did the Tax Court err as a matter of law in determining that Gateway Terry was not exempt from Prince George's County's transfer tax?[1]

We shall hold that Gateway Terry is not a political subdivision in or of "the State," within the meaning of the statutory exemptions. In view of our disposition of those issues, we need not address whether an LLC, which is owned by a pension fund for employees of a local government in another state, is a "political subdivision" of that state.

## DISCUSSION

### A.  Scope of Review of the Tax Court's Decision

"The Tax Court is 'an adjudicatory administrative agency in the executive branch of state government.'" *Frey v. Comptroller*, 422 Md. 111, 136 (2011) (quoting *Furnitureland S., Inc. v. Comptroller*, 364 Md. 126, 137 n.8 (2001)); *accord Gore Enter.*

---

[1] The questions from Gateway Terry's brief are:

1. Whether the plain meaning of "State" in Section 12-108(a) of the Tax-Property Article of the Code of Maryland is unambiguously provided by the specific and express definition of "State" in Section 1-101(kk) of the Tax-Property Article of the Code of Maryland?

2. Whether a limited liability company wholly owned by a governmental body is exempt under Section 12-108(a) of the Tax-Property Article of the Code of Maryland, where such company is disregarded for tax purposes and similarly situated companies owned by the Maryland State Retirement and Pension System have historically been exempted from taxation?

3. Whether Prince George's County's transfer tax is subject to and should be construed together with the exemptions and definitions provided by the general public laws governing transfer taxes in the Tax-Property Article of the Code of Maryland?

4

*Holdings, Inc. v. Comptroller*, 437 Md. 492, 503 (2014). "As such, the Tax Court is subject to the same standards of judicial review as other administrative agencies." *Frey v. Comptroller*, 422 Md. at 136; *see Comptroller v. Johns Hopkins Univ.*, 186 Md. App. 169, 181 (2009). "We review the decision of the Tax Court, not the ruling of the circuit court." *Comptroller v. Johns Hopkins Univ.*, 186 Md. App. at 181; *accord Blue Buffalo Co. v. Comptroller*, 243 Md. App. 693, 701 (2019).

Because the tax court's decision involves a pure question of law concerning the meaning of the State and County enactments, we review it without deference. *See Blue Buffalo Co. v. Comptroller*, 243 Md. App. at 702. Although we are directed to place "'great weight'" on the tax court's interpretations of the statutes and regulations that it administers (*id.* (quoting *Gore Enter. Holdings, Inc. v. Comptroller*, 437 Md. at 505)), "[t]his principle is limited by the 'plain meaning' rule of interpretation; that is 'where there is no ambiguity and the words of the statute are clear, we simply apply the statute as it reads.'" *Id.* (quoting *Frey v. Comptroller of Treasury*, 422 Md. at 182). As the County and the State point out, however, "it is well settled that tax-exemption statutes are to be strictly construed in favor of the taxing authority." *Supervisor of Assessments of Baltimore Cnty. v. Keeler*, 362 Md. 198, 209 (2001).

### B. The Statutory Exemptions

This case turns on the interpretation of three enactments: TP § 12-108(a)(1), TP § 13-207(a)(1), and § 10-187(a) of the Prince George's County Code.

TP § 12-108(a)(1) creates an exemption from State recordation taxes for an instrument of writing that transfers property or grants a security interest to "the State,"

5

"an agency of the State," or "a political subdivision in the State." TP § 13-207(a)(1) creates an exemption from State transfer taxes "to the same extent" that "[a]n instrument of writing" is exempt from the "recordation tax under . . . [TP] § 12-108(a)." Section 10-187(a) of the Prince George's County Code creates an exemption from County transfer taxes for "[c]onveyances to the State, any agency of the State, or any political Subdivision of the State." Thus, in the case of each enactment, the availability of the exemption depends, directly or indirectly, on whether the transferee is "the State," "an agency of the State," or a "political subdivision" in or of "the State."

Gateway Terry contends that it is entitled to the exemptions because, it says, it is a political subdivision in or of "the State." The validity of that contention depends, in part, on competing definitions of the term "State" or "state" in the Maryland Code.

The General Provisions Article of the Code supplies a number of definitions that apply throughout the Code in its entirety, except as otherwise provided. Md. Code (2014, 2019 Repl. Vol.), § 1-101 of the General Provisions Article ("GP"). GP § 1-115(a) defines the term "state," with a lower case "s," to mean:

(1) a state, possession, territory, or commonwealth of the United States; or

(2) the District of Columbia.

By contrast, GP § 1-115(b) defines the term "State, with a capital "S," to mean "Maryland."

The Tax-Property Article, however, contains another definition of "State." According to TP § 1-101(kk):

"State" means:

6

(1) a state, possession, or territory of the United States;

(2) the District of Columbia; or

(3) the Commonwealth of Puerto Rico.[2]

Relying on TP § 1-101(kk), Gateway Terry argues that the term "State" in TP § 12-108(a)(1) includes any one of the 50 American states, as well as their political subdivisions. Because Gateway Terry claims to be a political subdivision of the State of California, it concludes that it was entitled to the exemptions in TP § 12-108(a)(1) and § 10-187(a) of the Prince George's County Code. Similarly, Gateway Terry concludes it was entitled to the exemption in TP § 13-207(a)(1), which applies "to the same extent" that "[a]n instrument of writing" is exempt under TP § 12-108(a).

### C.   *Principles of Statutory Construction*

"'When we are called upon to interpret any statute, we first examine the ordinary meaning of the enacted language, reading the statute as a whole to avoid an interpretation that might nullify another part of the statute.'" *Martinez v. Ross*, 245 Md. App. 581, 590 (2020) (quoting *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. 1, 14 (2018)), *cert. denied*, 469 Md. 656 (2020). "'[T]o understand the meaning of statutory language, we must look beyond individual words and clauses to the larger context, including other surrounding provisions and the apparent purpose of the enactment.'" *Id.* at 591 (quoting *Trim v. YMCA of Cent. Maryland*, 233 Md. App. 326, 334-35 (2017)); *accord Maryland*

---

[2] In addition to Puerto Rico, the possessions or territories of the United States include American Samoa, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands. https://www.ncsl.org/Portals/1/Documents/magazine/articles/2018/SL_0118-Stats.pdf.

*Office of People's Counsel v. Maryland Pub. Serv. Comm'n*, 226 Md. App. 483, 509 (2016). "We do 'not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone.'" *Id.* at 591 (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010)).

### D.    The State Exemptions

We begin with the plain meaning of TP § 12-108(a)(1). It provides:

> Except as provided in paragraph (2) of this subsection, an instrument of writing is not subject to recordation tax, if the instrument of writing transfers property to or grants a security interest to:
>
> (i) the United States;
>
> (ii) the State;
>
> (iii) an agency of the State; or
>
> (iv) a political subdivision in the State.

Although the General Provisions Article defines the term "State," with a capital "S," to mean the State of "Maryland" (GP § 1-115(b)), Gateway Terry argues, with some force, that that general definition applies only if another definition is not "otherwise provided." GP § 1-101. Gateway Terry points out that the Tax-Property Article provides its own definition of "State" or "state," and that the definition includes "a state . . . of the United States." TP § 1-101(kk). Gateway Terry concludes that, in determining the

8

meaning of the term "State" in TP § 12-108(a)(1), a court must apply the definition in the Tax-Property Article.[3]

In holding that the plain meaning of the term "the State" refers to the State of Maryland, and not to any other State in the United States, the tax court relied on the presence of the definite article "the," which modifies the word "State" in § 12-108(a)(1): "an instrument of writing is not subject to recordation tax, if the instrument of writing transfers property to or grants a security interest to . . . *the* State." (Emphasis added.) The tax court reasoned that because the statute refers to "the" State rather than "a" State or state, the legislature must have intended the statute to refer to only one, specific state, namely, the State of Maryland. We agree.

"The articles 'a' or 'an' are indefinite articles, in contrast to the definite article 'the.'" *Evans v. State*, 396 Md. 256, 341 (2006). "Most courts have construed 'a' or 'an' as meaning 'any' and as not restricted to just one." *Id.*; *Payne v. State*, 243 Md. App. 465, 486 (2019). By contrast, the definite article "'the' refers to a certain object." *Black's Law Dictionary* 1324 (5th ed. 1984); *accord Webster's Encylopedic Unabridged Dictionary of the English Language* 1470 (1989) (stating that "the" is "used, esp. before a

---

[3] Gateway Terry assumes that TP § 1-101(kk) defines the term "State," with a capital "S." It is, however, less than entirely clear that the assumption is correct. In TP § 1-101(kk), the defined term is "State," with a capital "S," but that is because "State" is the first word in the sentence, which, in ordinary English usage, is capitalized. Furthermore, in explicating the meaning of the defined term, TP § 1-101(kk) uses the word "state," with a lower case "s." In accordance with the convention for legislation, all of the words in the statute were capitalized in the bill that the General Assembly passed. 1985 Md. Laws ch. 8, at 57.

noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article *a* or *an*").

The use of the definite article "the" in § 12-108(a)(1) demonstrates that the term "the State" refers only to *the* State of Maryland. In creating this exemption for transfers to "the State," an agency of "the State," or a political subdivision in "the State," the General Assembly expressed its intention to limit the exemption to one, specific and particular State, which, in context, could only mean the State of Maryland. The statutory exemption for "the State" does not extend to all 50 American states.[4]

Had the General Assembly intended to exempt conveyances to any one of the 50 states (and to their agencies and political subdivisions), it could easily have done so by employing the phrase "a state" or "a State," rather than "the State." As the County and the State astutely point out in their brief, "California is *a* state, not *the* State." (Emphasis in original.) The exemption for transfers to "the State" does not apply to transfers to California, or to its agencies or political subdivisions.

Gateway Terry responds by dismissing the importance of the definite article preceding "State." It invokes the interpretational rule that "[t]he singular includes the plural and the plural includes the singular" (GP § 1-202) to argue that the term "the State" includes any of the American states.

---

[4] The parties do not discuss the policy behind the exemptions in TP § 12-108(a)(1) and TP § 13-207(a)(1), but one obvious rationale is to avoid the absurd situation in which the State of Maryland (or one of its agencies or political subdivisions) would be required to pay State recordation and transfer taxes to the State itself.

10

Gateway Terry does not fully develop its argument, but it appears to envision that under § 12-108(a)(1) the exemption would apply to transfers to "the States" (or to agencies or political subdivisions of "the States"), as the term "State" or "state" is defined in TP § 1-101(kk). Under Gateway Terry's formulation, however, the definite article "the" would refer to "States" collectively. Hence, under this formulation, the exemption would seem to apply only in the case of a transfer to all of "the States" (or to an agency or political subdivision of all of "the States"), an unlikely event. We reject Gateway Terry's formulation as implausible.

In any event, by making "the State" plural, Gateway Terry does not get where it needs to go, which is to transform an exemption for transfers to "the State" into an exemption for transfers to "a State" or to "any State." The definite article ("the") does not become an indefinite article ("a") when the noun that it modifies (here, "State") becomes plural. A transfer to "a State" is not a transfer to "the State."

Our conclusion, that "the State" means the State of Maryland, is supported by other uses of the term "the State" in the Tax-Property Article. For example, TP § 1-304 directs the Comptroller to pay the taxes that he collects into "the Treasury of the State"; it is rather obvious that the Comptroller is to pay these taxes into the Treasury of the State of Maryland, and not the Treasury of some other state. TP § 3-105 states that members of property-tax assessment appeal boards are entitled to compensation "at an hourly rate as provided in the State budget"; it is equally obvious that the board members are entitled to compensation at the hourly rate provided in the budget of the State of Maryland, and not the budget of some other state. Finally, TP § 14-1015 imposes criminal liability on

11

"[a]n officer or employee of the State . . . who negligently fails to perform a duty or to do any act required in" the Tax-Property Article; it is also obvious the statute applies to officers or employees of the State of Maryland, and not to officers or employees of some other state (as they have no duties or obligations under the Tax-Property Article).  In short, when the Tax-Property Article uses the term "the State," with a definite article and a capital "S," it uniformly refers to the State of Maryland.[5]

As the tax court recognized, the statutory history of the Tax-Property Article provides additional confirmation that the term "the State" in § 12-108(a)(1) refers to the State of Maryland, and not to any other state.  The statutory history also provides additional confirmation that the broader definition of "State" or "state" in TP § 1-101(kk) does not apply to § 12-108(a)(1).

Statutory history is "quite separate from legislative history."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 256 (2012).  Legislative history "consists of the hearings, committee reports, and debate leading up to the enactment in question."  *Id.*; *see also Hackley v. State*, 161 Md. App. 1, 14 (2005), *aff'd*, 389 Md. 387 (2005) (legislative history refers to "'the derivation of the statute,

---

[5] In its brief, Gateway Terry tends to ignore the definite article "the" in § 12-108(a)(1).  For example, in the first of its questions presented, Gateway Terry asks "[w]hether the plain meaning of 'State' in Section § 12-108(a) of the Tax-Property Article of the Code of Maryland is unambiguously provided by the specific and express definition of 'State' in Section 1-101(kk) of the Tax-Property Article of the Code of Maryland?"  In developing its argument, Gateway Terry asserts that "[t]he term 'State' is not defined in any other provision of Tax[-] Property Article," aside from TP § 1-101(kk).  Similarly, Gateway Terry criticizes the tax court for holding that the term 'State' in Section 12-108 exclusively refers to Maryland."

comments and explanations regarding it by authoritative sources during the legislative

process, and amendments proposed or added to it'") (quoting *Boffen v. State*, 372 Md.

724, 736-37 (2003)).  By contrast, statutory history consists of the "statutes repealed or

amended by the statute under consideration."  Antonin Scalia & Bryan A. Garner,

*Reading Law: The Interpretation of Legal Texts*, *supra*, 256.  Those statutes "form part of

the context of the statute" under consideration and "can properly be presumed to have

been before all the members of the legislature when they voted."  *Id*.

The General Assembly adopted TP § 12-108 in 1985, as part of the recodification

of former Article 81 into the new Tax-Property Article.  In the recodification, the

legislature repealed Article 81, § 277, which had created an exemption for "conveyances

to: (1) This State; (2) Any agency of this State; or (3) Any political subdivision of this

State."  The legislature replaced Article 81, § 277, with TP § 12-108(a), in which the

words "this State" were changed to "the State."  The revisor's note indicates that the

substitution of "the State" for "this State" was not intended to effectuate a substantive

change.  1985 Md. Laws ch. 8, at 451-52.  Thus, the revisor's note, which is an

expression of legislative intent on which we may rely,[6] confirms the tax court's

---

[6] "'It is a well-settled practice of this Court to refer to the Revisor's Notes when searching for legislative intent of an enactment.'"  *Comptroller of Treasury v. Blanton*, 390 Md. 528, 538 (2006) (quoting *Dean v. Pinder*, 312 Md. 154, 163 (1988)); *see also Kane v. Schulmeyer*, 349 Md. 424, 435, 437 (1998) (noting that "a fair indication of legislative intent . . . is unmistakably revealed . . . in the Revisor's Note"); *Murray v. State*, 27 Md. App. 404, 409 (1975) (relying on revisor's note as an indication of legislative intent).

conclusion that the words "the State" in § 12-108(a) mean the same thing as the words

"this State" in former Article 81, § 277: the State of Maryland.[7]

The statutory history of the Tax-Property Article also explains why we have a

second definition of "State" or "state" in TP § 1-101(kk) and where the second definition

applies. That definition, too, became part of Maryland law in 1985 as part of the

recodification of former Article 81 into the Tax-Property Article. The revisor's note

explains that the definition of "State" or "state" in TP § 1-101 was "new language added

to avoid repetition of phrases such as 'state, possession, territory, the District of

Columbia, or the Commonwealth of Puerto Rico." 1985 Md. Laws ch. 8, at 57, 600. In

other words, the definition of "State" or "state" in TP § 1-101 is a shorthand reference for

a longer set of terms that had appeared at various places in former Article 81.

None of those terms appeared in the predecessor of TP § 12-108(a), Article 81, §

277. Article 81, § 277, referred to a conveyance to "this State"; it did not refer to

conveyances to a "state, possession, territory, the District of Columbia, or the

Commonwealth of Puerto Rico." Consequently, the definition of "State" or "state" in TP

§ 1-101(kk) has no place in TP § 12-108(a).

---

[7] Gateway Terry complains that the tax court erred in looking to "legislative history" to interpret an unambiguous statute. The complaint has no foundation. Although the tax court said that it was looking to "legislative history," it was, in fact, examining the statutory history of the Tax-Property Article. In any event, "even when [statutory] language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language." *State v. Roshchin*, 446 Md. 128, 140 (2016). Hence, the tax court would not have erred in considering legislative history had it done so.

To put it another way, the Tax-Property Article does not "otherwise provide[]" (GP § 1-101) a definition for the term "the State"; thus, the general definition in GP § 1-115(b) continues to apply. "[T]he State," in TP § 12-108(a), means "Maryland." GP § 1-115(b). Accordingly, the exemption in TP § 12-108(a) applies only to an instrument of writing that transfers property or grants a security interest to the State of Maryland, its agencies, or its political subdivisions. And because TP § 13-207(a)(1) applies "to the same extent" that "[a]n instrument of writing" is exempt from taxation under TP § 12-108(a), it too applies only to an instrument of writing that transfers property or grants a security interest to the State of Maryland, its agencies, or its political subdivisions.

### E.    The County Exemption

Gateway Terry also argues that the tax court erred in determining that it was not exempt from Prince George's County's County transfer tax. This argument has no more merit than its argument concerning the State transfer and recordation taxes.

Prince George's County Code § 10-187(a)(1) states that "Conveyances to the State, any agency of the State, or any political Subdivision of the State shall not be subject to the tax imposed under this Section." Section 10-102(33) of the Prince George's County Code defines the term "**State**" to mean "the State of Maryland." By its terms, therefore, § 10-187(a)(1) creates an exemption only for conveyances to the State of Maryland, an agency of the State of Maryland, or a political subdivision of the State of Maryland. It does not create an exemption for conveyances to another state, to an agency of another state, to a political subdivision of another state, or to an LLC that is owned by a pension fund for employees of a political subdivision of another state.

15

Gateway Terry asserts that the County cannot create an exemption for its own transfer taxes that is narrower than the exemption for State transfer taxes under State law. Yet we know of no reason why the County would be prohibited from adopting a narrower exemption than the exemption in State law, and Gateway Terry offers none. In any event, the premise of Gateway Terry's argument is incorrect, because the exemption under County law is not narrower than the exemption under State law: it is congruent with the exemption in State law, because both State and County law allow an exemption only in the case of conveyances to the State of Maryland, an agency of the State of Maryland, or a political subdivision of the State of Maryland.[8]

### F.    *Equal Protection*

In the tax court and the circuit court, Gateway Terry argued that the taxing authorities had violated its rights to equal protection under the State and federal Constitutions by discriminating against states other than the State of Maryland. The equal protection argument assumes that the State and County enactments create an exemption for transfers to states other than the State of Maryland, but that the taxing authorities have applied the enactments in an unconstitutionally discriminatory fashion by awarding the exemptions only to the State of Maryland (and its agencies and political subdivisions).

---

[8] Gateway Terry argues that the tax court erred in concluding that it is not a political subdivision in or of the State of California. Because we conclude that the exemptions are not available to political subdivisions of states other than the State of Maryland, we need not decide whether Gateway Terry, an LLC owned by a pension fund for the employees of a county in California, is a "political subdivision" in or of the State of California.

16

The tax court did not consider the argument, apparently because Gateway Terry first asserted it in a supplemental filing that was supposed to address legislative history. The circuit court did not consider the argument because the tax court did not consider it.

Under basic principles concerning the exhaustion of administrative remedies, we too would ordinarily be precluded from considering the equal protection argument. *See*, *e.g.*, *Brodie v. Motor Vehicle Admin.*, 367 Md. 1, 3-4 (2001) (stating that, "in an action for judicial review of an adjudicatory decision by an administrative agency, a reviewing court ordinarily 'may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency'") (quoting *Department of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 123 (2001)).[9]

But even if the equal protection issue were properly before us (which it is not), we would reject it. At oral argument, Gateway Terry told us that if we disagreed with its argument about the interpretation of TP § 12-108, it would follow that the statute was not being applied in a discriminatory fashion. As explained above, we do disagree with Gateway Terry's interpretation of TP § 12-108 (and TP § 13-207(a)(1) and § 10-187(a) of the Prince George's County Code). These enactments do not create exemptions for transfers to states other than the State of Maryland (or to the agencies or political subdivisions of those states). Therefore, the taxing authorities did not apply the statutes

---

[9] The "extremely narrow" "constitutional exception" to the requirement of exhaustion does not apply here, because Gateway Terry does not challenge the constitutionality of the statute as a whole, but only as it was applied. *See*, *e.g.*, *Prince George's County v. Ray's Used Cars*, 398 Md. 632, 651, 654-55 (2007).

in a discriminatory fashion by declining to afford the exemptions to an entity that claims

to be a political subdivision of a state other than the State of Maryland.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**