*Douglas A. Brasse v. State of Maryland.*, No. 1070, September Term, 2023. Opinion by Graeff, J.

**FIRST AMENDMENT—FACIAL OVERBREADTH—CHILD PORNOGRAPHY**

Md. Code Ann., Crim. Law ("CR") § 11-208 (2021 Repl. Vol.) prohibits "knowingly possess[ing]" a "film, videotape, photograph, or other visual representation" that shows an "actual child or a computer-generated image that is indistinguishable from an actual and identifiable child under the age of 16 years" engaging in certain types of sexual behavior or appearing in a state of sexual excitement. The statute provides that the term "indistinguishable from an actual and identifiable child" means that "an ordinary person would conclude that the image is of an actual and identifiable minor." § 11-208(a)(1). The statute "includes a computer-generated image that has been created, adapted, or modified to appear as an actual and identifiable child," § 11-208(a)(2), and it "does not include images or items depicting minors that are (i) drawings; (ii) cartoons; (iii) sculptures; or (iv) paintings." § 11-208(a)(3).

There is no dispute that child pornography produced with an actual minor is a category of speech that is not protected under the First Amendment. Appellant argues, however, that CR § 11-208 is overbroad and unconstitutional because it encompasses pornography that was created without involving any real child. Based on the plain language of CR § 11-208 and the legislative history, however, the statute was drafted to exclude images that did not implicate real children; it prohibits only the possession of pornography depicting an actual child or a computer-generated image that is indistinguishable from an actual and identifiable child under the age of 16 years old. This includes morphed child pornography, virtual images altering innocent pictures of real children to appear to be engaged in sexual activity, and "deepfakes," which use artificial intelligence to generate photorealistic virtual images. To the extent that the images use an actual child's face and are indistinguishable from an actual and identifiable child, they subject an actual child to reputational and emotional harm, and therefore, are not protected speech under the First Amendment. Appellant failed to show that CR § 11-208 is facially overbroad, in violation of the First Amendment right to freedom of speech.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1070

September Term, 2023

_____

DOUGLAS A. BRASSE

v.

STATE OF MARYLAND

_____

Graeff,
Leahy,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: March 27, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On February 28, 2023, in the Circuit Court for Howard County, Douglas Brasse, appellant, entered a plea of not guilty, based on an agreed statement of facts, to one count of possession of child pornography. The court sentenced appellant to five years' incarceration, all but six months suspended, and five years' probation.

On appeal, appellant presents the following question for this Court's review, which we have rephrased slightly, as follows:

> Did the circuit court err in denying appellant's motion to dismiss the indictment on the ground that Md. Code Ann., Crim. Law ("CR") § 11-208 (2021 Repl. Vol.) is facially unconstitutional?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged appellant with five counts of possessing a visual representation of a child under the age of 16 engaged in sexual conduct. Each count related to a different video. The videos depicted the following: (1) "a female child approximately 2–4 being vaginally penetrated by an adult male"; (2) "a young female about 2–4 years old performing fellatio on an adult male penis"; (3) "a young male, aged about 8–12 performing fellatio on an adult male"; (4) "a young female about 6–9 years old performing fellatio on an adult male penis"; and (5) "a young female about 8–10 years old [lying] nude on her back while an adult male is engaging in vaginal sex with her." None of the charges alleged that appellant possessed computer-generated pornography.

Appellant filed a Motion to Dismiss for Prosecution Based on Facially Unconstitutional Statute, arguing that CR § 11-208 violates the First Amendment to the United States Constitution. Appellant noted that, in *Ashcroft v. Free Speech Coalition*, 535

U.S. 234 (2002), the United States Supreme Court held that a provision of the Child Pornography Prevention Act of 1996 ("CPPA"), 18 U.S.C § 2256(8)(B), was unconstitutional because it criminalized computer-generated images of child pornography, even though "no actual children were harmed in the production of the photo." Appellant argued that CR § 11-208 similarly is unconstitutional.

The State filed an opposition to appellant's motion, arguing that: (1) the minors depicted in the videos at issue were "live" children, not computer-generated children; and (2) the statute was constitutional because the plain language of CR § 11-208 prohibited only computer generated-images that portrayed "a real child," given the statutory language that the image be indistinguishable from "an actual and identifiable child." The State asserted that the General Assembly was aware of the ruling in *Free Speech Coalition* when it enacted CR § 11-208, and the language "'actual and identifiable child' was intentionally chosen to be compl[ia]nt with the Constitution."

On June 2, 2022, the court held a motions hearing. Counsel for appellant asserted that there are three types of child pornography: (1) actual images "of a real child in real time"; (2) computer-generated pornography, where "a computer draws an image" that depicts "no real humans"; and (3) morphed images, "where the real image of a real head of an actual child is photo-shopped onto an adult, or a nude child's body." Counsel argued that, although "actual pictures of actual children" can and should be criminalized, purely computer-generated images are protected speech. Counsel contended that the language in CR § 11-208 could encompass both purely computer-generated images and morphed

2

images, and because CR § 11-208 criminalized the possession of "purely computer-generated images" that harmed "no actual person," it was unconstitutional.

At the conclusion of the hearing, the court denied the motion. It stated that the statute was revised with language that comported with *Free Speech Coalition*, and it was constitutional.

On February 28, 2023, appellant entered a plea of not guilty, based on an agreed statement of facts, to Count One of the indictment. The court found appellant guilty with respect to Count One, possession of child pornography. The State *nolle prossed* the remaining counts, and the court sentenced appellant.

This appeal followed.

## STANDARD OF REVIEW

"[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Lipp v. State*, 246 Md. App. 105, 110 (2020) (quoting *Howard v. Crumlin*, 239 Md. App. 515, 521 (2018)). The determination of the constitutionality of a statute is a question of law. *Martinez ex rel. Fielding v. The John Hopkins Hosp.*, 212 Md. App. 634, 656, *cert. denied*, 435 Md. 268 (2013). Accordingly, we review the issue presented de novo. *Id.*

## DISCUSSION

Appellant contends that CR § 11-208, which prohibits possession of a "computer-generated image that is indistinguishable from an actual child," is facially unconstitutional because it "bans [pornographic] material that does not involve or harm any real child," and

3

therefore, it is overbroad in violation of the First Amendment right to freedom of speech. Accordingly, appellant asserts that the circuit court erred in denying his motion to dismiss.

The State contends that the circuit court properly denied appellant's motion to dismiss. It argues that CR § 11-208 is constitutional because it prohibits "computer-generated imagery of an 'actual and identifiable child'—i.e., a child who actually exists and whose identity can be determined." Consequently, the statute "prevents harm only to real children and does not unlawfully restrict protected speech."

## I.

## CR § 11-208

CR § 11-208 provides,[1] in relevant part, as follows:

(b)(1) A person may not knowingly possess and intentionally retain a film, videotape, photograph, or other visual representation showing an actual child or a computer-generated image that is indistinguishable from an actual and identifiable child under the age of 16 years:

    (i) engaged as a subject of sadomasochistic abuse;

    (ii) engaged in sexual conduct; or

    (iii) in a state of sexual excitement.

The statute provides the following definitions:

(a)(1) In this section, "indistinguishable from an actual and identifiable child" means an ordinary person would conclude that the image is of an actual and identifiable minor.

---

[1] We cite to the statute as it currently exists. There were minor changes to the statute in 2023, after appellant was convicted, but the changes related to organization and not substance.

(2) "Indistinguishable from an actual and identifiable child" includes a computer-generated image that has been created, adapted, or modified to appear as an actual and identifiable child.

(3) "Indistinguishable from an actual and identifiable child" does not include images or items depicting minors that are:

(i) drawings;

(ii) cartoons;

(iii) sculptures; or

(iv) paintings.

The statute contains an exemption and an affirmative defense. CR § 11-208(d) provides that the statute does not apply to a parent who possesses a visual representation of the "parent's own child in the nude unless the visual representations show the child engaged: (1) as a subject of sadomasochistic abuse; or (2) in sexual conduct and in a state of sexual excitement." Section 11-208(e) provides that it is "an affirmative defense to a charge of violating this section that the person promptly and in good faith: (1) took reasonable steps to destroy each visual representation; or (2) reported the matter to a law enforcement agency."[2]

---

[2] Several bills were introduced in 2025 with respect to Md. Code Ann., Crim. Law ("CR") § 11-208 (2021 Repl. Vol.) and child pornography generally, but they are not relevant to the issue presented in this appeal. On January 8, 2025, House Bill 5 was introduced. H.B. 5, 447th Gen. Assemb., Reg. Sess. (Md. 2025). The proposed law amends CR § 11-208(a), to define a "computer-generated image" as including "images created through the use of artificial intelligence software." *Id.* On January 16, 2025, and January 23, 2025, H.B. 364 and S.B. 545 were introduced, proposing a new section 11-208.2(B)(1), which refers to a violation of § 11-207 and § 11-208 with 100 or more images. H.B. 364, 447th Gen. Assemb., Reg. Sess. (Md. 2025); S.B. 545, 447th Gen. Assemb., Reg. Sess. (Md. 2025).

## II.

## Free Speech Rights and Child Pornography Generally

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits Congress from making any law "abridging the freedom of speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003).[3] *Accord Lipp*, 246 Md. App. at 111. "[A] law imposing criminal penalties on protected speech" constitutes suppression of speech. *Free Speech Coalition*, 535 U.S. at 244.

The right to freedom of speech, however, is "not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942); *Black*, 538 U.S. at 359. The First Amendment "is not an impenetrable shield which protects any speech or conduct, whatsoever, with disregard to its harm and effect." *Galloway v. State*, 365 Md. 599, 646 (2001) (quoting *Kansas v. Whitesell*, 13 P.3d 887, 900 (2000)), *cert. denied*, 535 U.S. 990 (2002). "[F]reedom of speech has its limits." *Free Speech Coalition*, 535 U.S. at 245. For content-based laws impacting speech to be upheld, however, strict scrutiny review requires a court to determine that the restriction on speech is justified because the restrictions "are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015).

---

[3] The Maryland Constitution provides, in relevant part, "that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." Md. Const., Decl. of Rts., art. 40. Appellant relies solely on the First Amendment to the United States Constitution in arguing that CR § 11-208 is unconstitutional.

The United States Supreme Court has held that content-based restrictions on certain categories of speech satisfy the strict scrutiny standard. For example, defamation, incitement, and obscenity do not constitute protected speech. *Free Speech Coalition*, 535 U.S. at 246. Additionally, a state may ban "fighting words," i.e., "conduct that itself inflicts injury or tends to incite immediate violence." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 380 (1992) (quoting *In re Welfare of R.A.V.*, 464 N.W.2d 507, 510 (Minn. 1991)); *Lipp*, 246 Md. App. at 112.

In 1982, the Supreme Court held that child pornography produced with an actual minor is another category of speech that is not protected under the First Amendment. *New York v. Ferber*, 458 U.S. 747, 757, 764 (1982). In upholding the statute and rejecting a First Amendment challenge, the Court noted that the prohibition against legally obscene materials did not provide "a satisfactory solution to the child pornography problem," and the States were "entitled to greater leeway in the regulation of pornographic depictions of children." *Id.* at 756, 761.[4] The Court listed several reasons in support of its conclusion. Initially, it noted that the State's interest in "'safeguarding the physical and psychological

---

[4] In *Miller v. California*, 413 U.S. 15, 16, 24 (1973), the United States Supreme Court set forth a test to determine what constituted unprotected obscenity, including that the material be offensive "in light of community standards," but this test "did not 'make obscenity readily identifiable,' leaving its 'prosecution difficult and fraught with constitutional challenges.'" *United States v. Mecham*, 950 F.3d 257, 261 (5th Cir.) (quoting James H. Jeffries IV, Note, *Seizing Obscenity:* New York v. P.J. Video, Inc. *and the Waning of Presumptive Protection*, 65 N.C. L. Rev. 799, 804 (1987)), *cert. denied*, 141 S. Ct. 139 (2020). As the Supreme Court of Maryland recently explained, adult pornography can be regulated only if it meets the definition of obscenity, but pornography showing minors can be proscribed, even if it is not obscene, given the State's interest in protecting children from exploitation. *Turenne v. State*, 488 Md. 239, 277 (2024).

well-being of a minor' is 'compelling,'" *id.* at 756-57 (quoting *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 607 (1982)), and "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757. Moreover, the Court noted that child pornography is "intrinsically related to the sexual abuse of children," that the "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child," and when child pornography is distributed, "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 758-59. Noting that the value of such images was "exceedingly modest, if not *de minimis*," the Court held that the evil of child pornography "so overwhelmingly outweighs the expressive interests, if any," in this form of communication that it was entitled to no constitutional protection and "no process of case-by-case adjudication is required" to restrict it. *Id.* at 762-64.

The Court's decision in *Ferber* involved a statute criminalizing distribution of child pornography. *Ferber*, 458 U.S. at 749-51. In *Osborne v. Ohio*, 495 U.S. 103, 110-11 (1990), the Court extended its holding, ruling that states also may ban possession of child pornography. Although it had held in *Stanley v. Georgia*, 394 U.S. 557, 568 (1969), that the First Amendment prohibited criminalizing the possession of obscene material in the privacy of a person's home, the Court determined that the possession of child pornography was different because the State had a compelling interest in "safeguarding the physical and psychological well-being of a minor." *Osborne*, 495 U.S. at 109 (quoting *Ferber*, 458 U.S.

8

at 756-57). The Court stated that criminalizing possession could limit reputational damage to a child because it encourages the destruction of the images. *Id.* at 111.

In 1996, Congress passed the CPPA, which extended "the federal prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children." *Free Speech Coalition*, 535 U.S. at 239. The statute defined "child pornography" as:

> [A]ny visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> > (B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;
> >
> > (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or
> >
> > (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct[.]

18 U.S.C. § 2256(8)(B), (C), (D) (1996).[5]

---

[5] The statute defined an "identifiable minor" as:

(A) mean[ing] a person—

> (i)(I) who was a minor at the time the visual depiction was created, adapted, or modified; or
>
> (II) whose image as a minor was used in creating, adapting, or modifying the visual depiction; and

In *Free Speech Coalition*, 535 U.S. at 241, the Supreme Court addressed the constitutionality of the statute. It began by noting that, assuming that "[p]ictures of young children engaged in certain acts might be obscene," the statute sought "to reach beyond obscenity." *Id.* at 240. The Court stated that it needed to address whether the statute was unconstitutional where it proscribed speech that was neither obscene nor "child pornography under *Ferber*." *Id.* Specifically, it addressed whether subsections (B) and (D) of § 2256(8) were overbroad. *Id.* at 239-58.

"The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Id.* at 244. Under this principle, known as the facial overbreadth doctrine, a statute is "unconstitutional on its face if it prohibits a substantial amount of protected expression." *Id.*

The Court in *Free Speech Coalition* first addressed § 2256(8)(B), which addressed a visual depiction that "appears to be" of a minor engaging in sexually explicit conduct. It held that this provision swept too broadly, noting that the prohibition "embrace[d] a Renaissance painting depicting a scene from classical mythology," as well as a movie filmed with adults pretending to be minors. 535 U.S. at 241. The statute encompassed "virtual child pornography" and prohibited images made by using computer imaging that created "realistic images of children who do not exist." *Id.* at 240-41. The Court stated

---

(ii) who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and shall not be construed to require proof of the actual identity of the identifiable minor.

18 U.S.C. § 2256(9).

that virtual child pornography was "not 'intrinsically related' to the sexual abuse of children." *Id.* at 250. Unlike real child pornography, which caused "injury to the child's reputation and emotional well-being," no child was involved in the creation of virtual child pornography. *Id.* at 249. The Court stated that the CPPA prohibited speech that "record[ed] no crime and create[d] no victims by its production." *Id.* at 250.

The Court ultimately concluded that Section 2256(8)(B) covered materials that were neither obscene nor recognized in *Ferber*, and the Government had not shown support for the law, which covered a substantial amount of lawful speech. *Id.* at 256. It held that the statute, therefore, was overbroad and unconstitutional. *Id.*

The Court additionally held that § 2256(8)(D), which prohibited sexually explicit materials that "conve[y] the impression" that they depict minors, also prohibited a substantial amount of protected speech. *Id.* at 257 (alteration in original). It noted that a visual depiction that contained no minors engaging in sexually explicit conduct could be treated as child pornography if it conveyed the impression that such conduct would be found in the depiction. *Id.* For example, it prohibited a "sexually explicit film containing no youthful actors, just because it is placed in a box suggesting a prohibited movie." *Id.* at 258. The Court stated that the First Amendment "requires a more precise restriction," and therefore, the provision was "substantially overbroad and in violation of the First Amendment." *Id.*

The Court noted that § 2256(8)(C), which prohibited an image that had been "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct," involved the alteration of pictures of real children so that they appeared

11

to be engaging in sexual conduct. *Id.* at 242. The Court stated that, "[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Id.* Because that provision was not challenged, however, the Court did not address it. *Id.*

Justice O'Connor wrote a separate opinion, concurring in part and dissenting in part. *Id.* at 260-67 (O'Connor, J., concurring in part, dissenting in part). She agreed with the Court's conclusion that the First Amendment required that § 2256(8)(D) be struck down, but she disagreed with its decision to strike down § 2256(8)(B) "in its entirety." *Id.* at 261.[6] She noted that the phrase in § 2256(8)(B) "appears to be … of a minor" "cover[ed] two categories of speech: pornographic images of adults that look like children ('youthful adult pornography') and pornographic images of children created wholly on a computer, without using any actual children ('virtual child pornography')." *Id.* She agreed that a ban on youthful adult pornography was overbroad. In her view, however, respondents had failed to show that the ban on virtual child pornography was overbroad. *Id.*

Justice O'Connor noted the Government's compelling interest in protecting children, and she concluded that those interests supported a ban on virtual child pornography, noting that such images can whet the appetites of child molesters or be used to seduce actual children. *Id.* at 263. She agreed with respondents, however, who argued

---

[6] Chief Justice Rehnquist and Justice Scalia joined in Part II of Justice O'Connor's opinion, the dissent, which opined that the defendant failed to show that the prohibition of virtual child pornography in 18 U.S.C. § 2256(8)(B) was overbroad. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 260, 263 (2002) (O'Connor, J., concurring in part, dissenting in part).

that the language in the statute was not narrowly tailored to serve the Government's interest, noting that the statute captured cartoon sketches that could not be used to seduce children. *Id.* at 264. Justice O'Connor concluded that a "better interpretation" of the phrase "appears to be" was "virtually indistinguishable from," an interpretation that would not apply to sketches. *Id.* She stated that this "narrowing interpretation avoids constitutional problems such as overbreadth and lack of narrow tailoring." *Id.* at 265.

Justice O'Connor noted that a litigant challenging a statute bore "the heavy burden of demonstrating that the regulation forbids a substantial amount of valuable or harmless speech," which respondents had failed to do. *Id.* Respondents had provided no examples of other materials that were "wholly computer generated and contain images that 'appea[r] to be ... of minors' engaging in indecent conduct, but that have serious value or do not facilitate child abuse." *Id.* at 265-66 (alteration in original). Accordingly, she concluded that their overbreadth challenge failed. *Id.* at 266.

In 2003, Congress amended 18 U.S.C. § 2256(8)(B) to address the Court's holding in *Free Speech Coalition*. Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, 117 Stat. 650 (2003) (the "PROTECT ACT"). Congress eliminated the phrase "appears to be of a minor" and added the following language, noted in italics:

> (8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where-

13

(B) such visual depiction is *a digital image, computer image,* or *computer-generated image that is,* or *is indistinguishable from, that* of a minor engaging in sexually explicit conduct.[7]

18 U.S.C. § 2256(8)(B) (emphasis added). Additionally, Congress added the following definition to 18 U.S.C. § 2256:

(11) the term "indistinguishable" used with respect to a depiction, means virtually indistinguishable, in that the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct. This definition does not apply to depictions that are drawings, cartoons, sculptures, or paintings depicting minors or adults.

The relevant language is still in effect today. *See* 18 U.S.C.A. §§ 2256(8)-(11) (Westlaw through Pub. L. 115-299) (last visited February 21, 2025).

Appellant's challenge here is that CR § 11-208 is unconstitutional because it encompasses pornography that was created without involving any real child. He argues that the statute is overbroad.

## III.

### Facial Overbreadth

We note, initially, that appellant's conviction involved a video of sexual activity involving a real child, not a virtual or fictional child. Accordingly, the statute, which prohibits possession of a videotape showing an actual child, CR § 11-208(b)(1), can be lawfully applied to appellant. His challenge, therefore, must be considered under the confines of the facial overbreadth doctrine. *See State v. Fingal*, 666 N.W.2d 420, 423

---

[7] The language in subsection (C), which included a visual depiction that was "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct," remains the same. 18 U.S.C. § 2256(8)(C).

14

(Minn. Ct. App. 2003) ("As a threshold matter, we note that, because appellants stipulated to possessing materials depicting sexual performances by real, identifiable children, their challenge to the statute as overbroad in allegedly prohibiting depictions of other sexual performances must be made under the facial overbreadth doctrine.").

"The traditional rule is that 'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.'" *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 38 (1999) (quoting *Ferber*, 458 U.S. at 767). The exception to this traditional rule is a First Amendment challenge based on First Amendment overbreadth. *Id.* As the United States Supreme Court has explained: "[T]he transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" *Id.* (quoting *Gooding v. Wilson*, 405 U.S. 518, 520-21 (1972)). In essence, "the overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, 599 U.S. 762, 769 (2023).

To justify facial invalidation for overbreadth, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). That "one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an

15

overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, to succeed on a facial overbreadth claim, the challenger must demonstrate "that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" *Hansen*, 599 U.S. at 770 (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). If the challenger makes this showing, "then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Id.* "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* The overbreadth doctrine is "strong medicine" and should be "employed . . . only as a last resort." *Broadrick*, 413 U.S. at 613.

When determining the constitutionality of a statute, we presume that the statute is valid. *Galloway*, 365 Md. at 610. "The party attacking the statute has the burden of establishing its unconstitutionality." *Id.* at 611. "If, however, a statute violates a 'mandatory provision' of the Constitution, 'we are required to declare such an act unconstitutional and void.'" *Id.* (quoting *Beauchamp v. Somerset Cnty.*, 256 Md. 541, 547 (1970)). We can avoid invalidating laws, however, by construing a statute narrowly to avoid overbreadth. *Osborne*, 495 U.S. at 119 (noting that it had "long respected" state courts' "ability to narrow state statutes so as to limit the statute's scope to unprotected conduct"); *Broadrick*, 413 U.S. at 613 ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute."); *Galloway*,

365 Md. at 619-27 (giving harassment statute a narrowing construction by reading into it a limiting "reasonable person" standard saved the statute from "constitutional demise").

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293.[8] The second step is to determine whether the statute, as construed, prohibits a substantial amount of protected speech "relative to what the statute may constitutionally prohibit." *McCree v. State*, 441 Md. 4, 16 (2014). We turn to that analysis.

## IV.

### Constitutionality of CR § 11-208

In the first step of the analysis, construing what CR § 11-208 covers, we note that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *State v. Brooke*, 262 Md. App. 207, 211 (2024) (quoting *State v. Bey*, 452 Md. 255, 265 (2017)). "The process begins with the plain meaning of the statutory language 'viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.'" *Id.* at 211-12 (quoting *Bey*, 452 Md. at 266). "The interpretive process ordinarily ends if the statutory language is unambiguous and consistent with the statute's apparent purpose." *Id.*

---

[8] In *United States v. Williams*, 553 U.S. 285, 293 (2008), the Court addressed 18 U.S.C. § 2252A(a)(3)(B), the statute that was enacted to replace § 2256(8)(D) after the *Free Speech Coalition* case. This statute prohibits advertising or soliciting material that reflects the belief, or intends to cause another to believe, that the material is obscene child pornography involving no actual minor. *Id.* The Court held that the statute was not overbroad. *Id.* at 299-303.

17

Nevertheless, we sometimes look to legislative history to confirm our analysis regarding legislative intent. *State v. Williams*, 255 Md. App. 420, 440 (2022); *Chesapeake Amusements, Inc. v. Riddle*, 363 Md. 16, 29 (2001).

We begin with the words of the statute, which prohibit "knowingly possess[ing]" a "film, videotape, photograph, or other visual representation" that shows an "actual child or a computer-generated image that is indistinguishable from an actual and identifiable child" engaging in certain types of sexual behavior or appearing in a state of sexual excitement. CR § 11-208(b)(1). The statute provides that the term "indistinguishable from an actual and identifiable child" means that "an ordinary person would conclude that the image is of an actual and identifiable minor." § 11-208(a)(1). It provides that the statute "includes a computer-generated image that has been created, adapted, or modified to appear as an actual and identifiable child," § 11-208(a)(2), and it "does not include images or items depicting minors that are (i) drawings; (ii) cartoons; (iii) sculptures; or (iv) paintings." § 11-208(a)(3).

We agree with the State that the plain meaning of the statutory terms, prohibiting an image that is indistinguishable from an "actual and identifiable child," requires an image that depicts a real child whose identity can be ascertained. The statute specifically excludes images that are drawings, cartoons, sculptures, or paintings. § 11-208(a)(3). Maryland's prohibition, therefore, is distinguishable from the federal prohibition struck down in *Free Speech Coalition*, which criminalized pornography that merely "appears to be," but does not, depict an actual minor.

18

The legislative history confirms our analysis. Possession of child pornography was made illegal in 1992. *Payne v. State*, 243 Md. App. 465, 491 (2019). The language at issue in this appeal was enacted in 2019. At that time, the General Assembly expanded the prohibition against possession of child pornography under CR § 11-208 "to include computer-generated images that are indistinguishable from an actual child under the age of sixteen." *In re S.K.*, 466 Md. 31, 56 n.22 (2019). It also added the definition of "indistinguishable from an actual and identifiable child," set forth *supra*. S.B. 736, 439th Gen. Assemb., Reg. Sess. (Md. 2019); H.B. 1027, 439th Gen. Assemb., Reg. Sess. (Md. 2019).

The "computer-generated images" language was "in response to the developing technology" that "permitted pornographers to utilize computers to create images and videos in which the naked eye is unable to identify that the image is not that of an actual child." *In re S.K.*, 466 Md. at 56 n.22. "The stated purpose of the amendments was for 'prohibiting a person from knowingly possessing and intentionally retaining a certain representation showing a computer-generated image that is indistinguishable from an actual and identifiable child under a certain age portrayed in a certain manner.'" *Payne*, 243 Md. App. at 495 (quoting 2019 Md. Laws, chs. 325, 326). One "aim of this legislation was a technology dubbed 'deepfakes[,]' [which] are 'videos that have been manipulated to make it look like the subject is realistically saying or doing something they didn't.'" *In re S.K.*, 466 Md. at 56 n.22 (quoting Benjamin Goggin, *From porn to 'Game of Thrones': How deepfakes and realistic-looking fake videos hit it big*, Bus. Insider (Jun. 23, 2019), https://www.businessinsider.com/deepfakes-explained-the-rise-of-fake-realistic-videos-

19

online-2019-6).  Deepfakes, which can be "created by AI that has been trained on hours of footage" permit a person to "superimpose faces onto other bodies."  *Id.* (quoting Goggin, *supra*).

With respect to letters in the legislative history regarding the 2019 amendments, we note that Senator Susan Lee, a sponsor of S.B. 736, stated in a letter to the House Judiciary Committee that the "new provision" in § 11-208 "includes images that an ordinary person would conclude [are of] an actual and identifiable minor."  Bill File for S.B. 736, Letter from Susan Lee, Leg. Dist. 16, to House Jud. Comm. (Mar. 27, 2019).[9]  Her letter shows that the General Assembly worked to draft the statute in compliance with constitutional limitations.  Senator Lee stated that, although *Free Speech Coalition* "touched on a similar issue," she believed that the language provided by the General Assembly "should be narrow enough to survive legal challenges on First Amendment grounds."  *Id.*[10]

---

[9]  As this Court explained in *Logan v. Dietz*, 258 Md. App. 629, 669 n.10, *cert. denied sub nom. Dietz v. Logan*, 486 Md. 221 (2023), "not all legislative history has equal value."  (quoting Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: the Use and Misuse of Legislative History*, 54 Md. L. Rev. 432, 437 (1995)).  Sponsor testimony is helpful in determining legislative purpose, but material provided by others tends to be, albeit not always, advocacy statements with limited purpose in determining legislative intent.  *Id.*

[10]  The legislative history also included a letter from then-Attorney General Brian E. Frosh to then-Governor Larry Hogan opining on the constitutionality of CR § 11-208.  Although this letter, written after the General Assembly passed the bill, is not necessarily relevant to legislative intent, we mention it as it relates to the ultimate issue here, i.e., the constitutionality of the statute.  In assessing the expansion of the statute to prohibit the possession of an image that is "indistinguishable from an actual and identifiable child," Attorney General Frosh noted that the statute applied to "situations where no child was used in the making of the material in question so long as it appears that an actual and identifiable child is involved in the depicted activity."  Attorney General Frosh noted that,

20

Based on the plain language of CR § 11-208 and the legislative history, the statute was drafted to exclude images that did not implicate real children; it prohibits only the possession of pornography depicting an actual child or a computer-generated image that is indistinguishable from an actual and identifiable child under the age of 16 years old. In assessing appellant's facial overbreadth claim, we reject his argument that CR § 11-208 is "virtually identical to the language struck down in" *Free Speech Coalition*. The statutory provision that the Supreme Court addressed in that case, § 2256(8)(B) of the CPPA, applied to an image that "appears to be" of a minor. The Court struck down this provision because it prohibited "child pornography that does not depict an actual child," and it included "realistic images of children who do not exist." *Free Speech Coalition*, 535 U.S. at 240. CR § 11-208, by contrast, does not contain the "appears to be" language, and it prohibits only images of an actual child or a computer-generated image that is indistinguishable from an actual and identifiable child, i.e., a child who does exist. Unlike § 2256(8)(B), which the Supreme Court held "create[d] no victims," *Free Speech Coalition*, 535 U.S. at 250, CR § 11-208 is limited to a situation that either is, or is indistinguishable from, an actual, identifiable child under the age of 16 years old. Maryland's statute is different from the statutory provision found to be unconstitutional in *Free Speech Coalition*.

---

although *Free Speech Coalition* held that "[v]irtual child pornography is not 'intrinsically related' to the sexual abuse of children," 535 U.S. at 250, the Court indicated in its discussion of computer morphing that such material would "implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Id.* at 242. After discussing decisions by other courts that had determined that morphed images with a child's face implicated the interest of a real child, he concluded that "the same harms are presented whenever an actual and identifiable child is depicted in child pornography," and therefore, it was the Attorney General's view that the bill amending CR § 11-208 was constitutional.

21

CR § 11-208 is more similar to a different provision in the CPPA. The Court in *Free Speech Coalition* briefly discussed § 2256(8)(C), which prohibited a "computer or computer-generated image or picture" where "such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct," Child Pornography Prevention Act of 1996, Pub. L. 104-208, § 121, 110 Stat. 3009-26 (1996) (current version, which has not changed, at 18 U.S.C. § 2256). The Court stated that this provision addressed "a more common and lower tech means of creating virtual images, known as computer morphing," which occurred when a person altered "innocent pictures of real children so that the children appear to be engaged in sexual activity." *Free Speech Coalition*, 535 U.S. at 242. It noted that, although "morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Id.* Because there was no challenge to this provision in *Free Speech Coalition*, however, the Court did not specifically address it. *Id.* CR § 11-208 is more analogous to § 2256(8)(C) than the provision that the Court struck down in *Free Speech Coalition* because it requires a depiction that reflects an identifiable minor.

Although *Free Speech Coalition* stated that morphed child pornography using images of real children was closer to real child pornography because it implicated the interests of real children, the Court declined to address whether it was protected under the First Amendment. Since that time, however, federal courts have repeatedly upheld § 2256(8)(C) and other federal statutes addressing morphed images against overbreadth challenges.

In *United States v. Mecham*, 950 F.3d 257, 260 (5th Cir.), *cert. denied*, 141 S. Ct. 139 (2020), the court addressed the constitutionality of prohibiting "morphed" child pornography, images in which faces of actual children are superimposed on photos of adults to make it appear that the minors were engaged in sexual activity. The court noted that the Supreme Court had recognized "the interest in preventing reputational and emotional harm to children as a justification for the categorical exclusion of child pornography from the First Amendment," and that "morphed child pornography raises this threat to a child's psychological well-being." *Id.* at 267. It concluded that, "because morphed child pornography depicts an identifiable child, it falls outside the First Amendment." *Id.*

In *United States v. Hotaling*, 634 F.3d 725, 728-29 (2d Cir.), *cert. denied*, 565 U.S. 1092 (2011), the court noted that federal and state governments have a "compelling interest in protecting minors from becoming victims of child pornography because of the physiological, reputational and emotional harm that distribution of such material imposes on them," and when considering a First Amendment challenge to a child pornography statute, the "underlying inquiry" is whether the "image of child pornography implicates the interests of an actual minor." The court held that § 2256(8)(C) is not overbroad because "the interests of actual minors are implicated when their faces are used in creating morphed images that make it appear that they are performing sexually explicit acts." *Id.* at 729-30. The identifiable minors in that case "were at risk of reputational harm." *Id.* at 730. The court held that "[s]exually explicit images that use the faces of actual minors are not protected expressive speech under the First Amendment." *Id.* *Accord Doe v. Boland*, 698

23

F.3d 877, 884 (6th Cir. 2012) (the action of creating a pornographic image by morphing a real child's face onto an adult's body harms the child and is sufficient to remove that action "from the protections of the First Amendment"), *cert. denied*, 570 U.S. 904 (2013).

State courts similarly have held that morphed child pornography is not protected under the First Amendment. *See, e.g.*, *People v. McKown*, 215 N.E.3d 831, 839 (Ill. 2022) (joining the "many state and federal courts in holding that morphed child pornography is not protected by the first amendment" based on harm that follows when "real children's images are used in depictions of sexual activity"); *McFadden v. State*, 67 So.3d 169, 184 (Ala. Crim. App. 2010) (morphed child pornography is not protected by the First Amendment because those images create a "lasting record" of "children engaged in genital nudity"), *cert. denied*, 565 U.S. 1092 (2011). *But see State v. Zidel*, 940 A.2d 255, 263-64, 265 (N.H. 2008) (although declining to reach overbreadth challenge, the court held that private possession of morphed images does not cause harm to the child, and the statute criminalizing this conduct violated Zidel's First Amendment rights).

CR § 11-208(b)(1), which prohibits knowingly possessing "a computer-generated image that is indistinguishable from an actual and identifiable child under the age of 16 years" portrayed in a certain way, criminalizes morphed pornography depicting an actual child. We agree with the courts that have held that possession of morphed pornography involving an actual child is not protected under the First Amendment. Morphed child pornography using actual minors involves reputational and emotional harm to actual children, and the compelling state interest in protecting children justifies the exclusion of these images from protection under the First Amendment. Indeed, counsel for appellant

24

conceded that possession of child pornography was not protected under the First Amendment.

Although the Supreme Court in *Free Speech Coalition*, 535 U.S. at 242, talked about computer-generated images in terms of "lower tech" computer morphing, technology has advanced tremendously since that time. In 2019, this Court noted that the computer-generated language in CR § 11-208 was added to address technology that had advanced to allow computer-generated images referred to as "deepfakes." *In re S.K.*, 466 Md. at 56 n.22. This process is more advanced than systems like Photoshop; "deepfakes are the product of artificial intelligence, relying on neural networks to generate 'realistic impersonations out of digital whole cloth.'" *See* Emily Pascale, *Deeply Dehumanizing, Degrading, and Violating: Deepfake Pornography and the Path to Legal Recourse*, 73 Syracuse L. Rev. 335, 337 (2023) (footnote omitted). "The process involves inputting hours of video footage of a specific individual to train the neural network to 'understand' the nuances of that person's face." *Id.* (footnote omitted). "Once the network is trained, it can digitally graft one person's face onto another person's body." *Id.* (footnote omitted).

Generative artificial intelligence models are used to create photorealistic images that are virtually indistinguishable from real images. Internet Watch Found., *How AI is being abused to create child sexual abuse imagery* 7 (2023). "In short, you type in what you want to see; the software generates the image." *Id.* These systems are "trained by a process called deep learning, which is a type of machine learning that is loosely modelled on the human brain – using artificial neural networks. These deep learning systems are trained on huge datasets scraped from the internet." *Id.* at 10. Diffusion models are trained via "a

25

vast dataset of images that are scraped from the internet and then labelled with descriptive words or phrases – the type of text that will later be used for prompting new generations." *Id.* at 12. These models are "large-scale" with the ability to generate "detailed, high-quality images." *Id.* at 13.

The most realistic AI child sexual abuse material is created by fine-tuned models "that are well-known among AI CSAM communities[11] – reputed for enabling realistic generation of certain CSAM scenarios, children, or child characteristics." *Id.* at 22. These models often use "datasets that feature a particular child individual – usually a known victim of child sexual abuse, or a famous child. This is because, for both these categories, large enough image sets exist to train AI models." *Id.*

To the extent that images are created by artificial intelligence using an actual child's face, the same concerns involved with morphing exist. Such images, to the extent that they are indistinguishable from an actual and identifiable child, implicate the interests of an actual child, who is subject to the type of reputational and emotional harm that justifies their exclusion from protection under the First Amendment.

It may be possible, however, that an image could be created virtually without reference to a specific person, but the image nevertheless could look indistinguishable from an actual minor that the State can identify at trial. In that circumstance, there is a concern that the statute covers virtual child pornography that *Free Speech Coalition* held was protected by the First Amendment.

---

[11] CSAM stands for child sexual abuse material. Internet Watch Found., *How AI is being abused to create child sexual abuse imagery* 7 (2023).

26

Initially, as we noted *supra*, the Court in *Free Speech Coalition*, 535 U.S. at 240, explained that the scope of the statute at issue prohibited images using technology that made "it possible to create realistic images of children who do not exist," and it prohibited "child pornography that does not depict an actual child." CR § 11-208, however, prohibits only images of an actual child or a computer-generated image that is indistinguishable from an actual and identifiable child, and it does not include images depicting minors that are drawings, cartoons, sculptures, or paintings. CR § 11-208 is more narrowly tailored to address the State's compelling interest in protecting children than the statutory provision struck down in *Free Speech Coalition*.

Maryland's law is similar to a Minnesota statute, which defined "pornographic work" as, among other things, a computer-generated image that was "created, adapted, or modified to appear that an identifiable minor is engaging in sexual conduct." Minn. Stat. § 617.246, subdiv.1(f)(2)(ii) (1999). The Court of Appeals of Minnesota held that the statute was not overbroad because the visual depiction "must be of an identifiable minor, not a virtual child." *Fingal*, 666 N.W.2d at 425.

Even if, as appellant argues, the statute encompasses some protected activity, a statute is facially invalid only "if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* at 303 (quoting *Members of City Council*, 466 U.S. at 800). Appellant has the burden to show that the statute criminalizes a substantial amount of protected speech. *Hansen*, 599 U.S. at 770.

27

Appellant has failed to meet his burden in this regard.  He has provided no statistics, cases, or other evidence showing a "realistic danger that the statute itself will significantly compromise recognized [F]irst [A]mendment protection of parties not before the court." *Galloway*, 365 Md. at 639 (quoting *Eanes v. State*, 318 Md. 436, 465 (1990)).  We are not aware, at this time, of any prosecutions for the possession of computer-generated virtual child pornography that was not based on images of an actual child but happened to look like an actual or identifiable child.  "We can hardly say, therefore, that there is a 'realistic danger' that [CR § 11-208] will deter such activity."  *Williams*, 553 U.S. at 302 (quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 11 (1988)).  Accordingly, on the record before us, appellant has failed to show that CR § 11-208 is overbroad.  The circuit court properly denied his motion to dismiss the indictment.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**